EDWARD HENRY SHARPE, APPELLANT, v. PUBLIC SERVICE RAILWAY COMPANY, RESPONDENT.

Submitted October 15, 1926—Decided May 21, 1927.

1. Plaintiff was riding on a motorcycle on a public street in the city of Newark, which street crossed another street upon which there was a double line of trolley tracks, operated by the defendant. Plaintiff testified that he was riding at a moderate rate of speed, and could have stopped his motorcycle within six feet; that when he approached the intersecting street "he kind of looked to the right" but without looking to his left, the direction from which a trolley car was approaching the crossing; he proceeded across the intersecting street, and was struck and

injured by a trolley car of the defendant company—*Held*, that from the facts recited, it was clear not only that there was an irresistible inference of negligence on the part of the plaintiff, but also that but for such negligence the accident would not have occurred, and therefore that a judgment of nonsuit upon the ground of contributory negligence was rightfully directed.

2. The principle enunciated by our courts that the driver of a horse-drawn vehicle is not always under an absolute duty to look for the approach of other vehicles, was based upon the theory that his attention must necessarily be, in large measure, devoted to the control of the animal he was driving. The advent of automotive vehicles has largely eliminated this element, because the automobile and motorcycle are scarcely less effectively under the driver's control than are his own legs, or a bicycle, and the reasoning which dealt with horse-drawn vehicles should not be extended beyond the exigencies which those conditions require.

On appeal from the Essex Circuit Court.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellant, *Otto A. Stieffel.*

For the respondent, *Joseph Coult.*

The opinion of the court was delivered by

LLOYD, J. This is an appeal from a judgment of nonsuit in the Essex Circuit Court. The plaintiff, Edward Henry Sharpe, brought an action against the Public Service Railway Company to recover damages for injuries to himself and to his motorcycle received in a collision with one of the company's electric cars. At the conclusion of the plaintiff's case the trial judge, deeming the plaintiff clearly guilty of contributory negligence, granted the nonsuit.

It is settled that two questions are always involved where negligence or contributory negligence is alleged. The first is whether the conduct of the person so charged constituted negligence. The second is whether that negligence contributed to the injuries sustained. Under ordinary conditions these questions are for the determination of the jury and not for the court. *Smith* v. *Public Service Corp.,* 78 *N. J. L.* 478.

If, however, upon the evidence adduced it shall clearly appear that such negligence does exist, and that it has a causal relation to an injurious accident, the question becomes one of law for the court. *New Jersey Express Co.* v. *Nichols,* 33 *N. J. L.* 434.

The view taken in the court below that the case as proved by the plaintiff invoked the application of the latter rule was, we think, upon a review of the evidence, justified. The facts as established by the plaintiff and his witness, Smith, developed the following situation: The railway company operates a double line of trackage on First street, in the city of Newark. First street runs · north and south, and the easterly rail of the northbound track is eleven and one-half feet from the easterly curb line. The accident occurred between twelve and one o'clock in the day on the 25th of April, 1922. The plaintiff was riding a motorcycle, going west on the northerly side of New street (which crosses First street at right angles) at the rate of seven to ten miles per hour, and, according to his own testimony, could stop his motorcycle within six feet. As he approached the intersection "he kind of looked to the right" and sounded a little exhaust whistle that he had rigged up temporarily on his motorcycle. Without looking to the south, in the direction from which the trolley car was approaching, he proceeded to cross First street without stopping or reducing his speed. As he neared the northbound east track his motorcycle ran into the side of the passing trolley car and close to its rear end. His motorcycle was damaged and he himself injured. It further appeared that the trolley car was in plain sight, not only of the plaintiff when he reached the curb line of First street, but also of the witness who was fifty to seventy-five feet back of him.

In these circumstances we think, as did the trial judge, that not only is the inference of negligence on the part of the plaintiff irresistibly manifest, but it is equally manifest that but for that negligence the accident could not have occurred. The rights of the parties on the highway were equal, and the fundamental duty of using reasonable care in approaching the intersection rested upon both the plaintiff and the de-

fendant. There was evidence in abundance of the negligence of the defendant's motorman, in that he was operating at high speed and without warning. On the other hand, there was, as we have said, also conclusive evidence of the failure of the plaintiff to use that ordinary degree of care which, if it had been exercised, would have saved him from the untoward consequences which resulted.

In the early days the highways were used by pedestrians, equestrians and drivers of horse-drawn vehicles. The high-powered motor in automobile and trolley car had not yet appeared. The cases involving the operation of the horse-drawn vehicle of necessity dealt with a factor which is not present in the automobile or a motorcycle, namely, the independent volition of the horse, and to some extent this independent volition and its want of complete controllability have entered into the reasoning upon which an absolute duty to look has not been always imposed, on the theory that the driver's attention must necessarily be in large measure devoted to the control of his animal. The advent of automotive power measurably eliminates this element, and want of complete control of the horse in contrast to the more amenable motor is recognized in our traffic laws, in that while an automobile is permitted to run at the rate of thirty miles per hour on the open highway, the horse is limited to twelve miles per hour along a public road. The rule respecting pedestrians has been uniform, that they must use their powers of observation before crossing trolley tracks. *Newark Passenger Railway Co.*, v. *Block*, 55 *N. J. L.* 605; *Jewett* v. *Railway Co.*, 62 *Id.* 424; *Shuler* v. *Railway Co.*, 75 *Id.* 824, and the same rule has been applied to the rider of a bicycle. *Passman* v. *West Jersey and Seashore Railroad*, 68 *Id.* 719, 722. The automobile and motorcycle are scarcely less effectively controllable than one's own limbs or a bicycle, and the reasoning which dealt with horse-drawn vehicles we think should not be extended beyond the exigencies which those conditions required.

Counsel for the appellant has cited numerous cases such as *Traction Co.* v. *Scott*, 58 *N. J. L.* 682, and *Consolidated Traction Co.* v. *Haight*, 59 *Id.* 577, 581, and while from these

cases and others it may be said that failure to look is not in all cases necessarily negligence, no one of them holds that such failure may not be negligence *per se*. Illustration of cases holding a failure to look, negligence debarring recovery, are *Salatanow* v. *Jersey City Railway Co., 70 Id.* 154; *Harbison* v. *Camden and Suburban Railway, 74 Id.* 254, and cases there cited in this court, and *Hackney* v. *West Jersey and Seashore Railroad, 78 Id.* 454, in the Court of Errors and Appeals. In the last-named case, in a carefully written opinion by Mr. Justice Reed, after reciting the facts to the effect that the plaintiff in that case was driving parallel with the trolley tracks on Atlantic avenue, in Atlantic City, that he drove until he reached a street crossing known as Frankford avenue, where he attempted to cross the tracks, and in doing so was struck by an approaching trolley car and killed; that plaintiff's wagon was loaded with brush and the plaintiff could neither look behind nor to the side, it was said: "While this is a settled rule [the obligation to look] respecting the duties of a pedestrian crossing a trolley track, it has been held that it is not *per se* negligence for the driver of a vehicle not to look for a trolley car before crossing a street railway. In no case, however, has it been held that in no situation is it negligence *per se* for the driver of a vehicle to attempt to cross without looking," and a judgment of nonsuit was sustained. If, as matter of law, the plaintiff in a case where he did not look because his observation was obstructed by the load on his vehicle was held to be guilty of contributory negligence, obviously, when one can look and does not do so he is chargeable with even greater culpability.

While, therefore, it is not always negligence *per se* for the operator of a motor vehicle to fail to look when approaching a street railway crossing, yet, under exceptional circumstances, it may so clearly appear that the failure to look demonstrates negligence and a casual relation between such negligence and the ensuing collision may be so patent as to present an entire question of law for the court, and upon which it may enter a nonsuit. Such a case we think is here presented. The trolley car with which the plaintiff collided had nearly crossed the intersecting New street and the motor-

cycle struck the trolley near the rear end. The slightest observance at a proper time of the conditions before him would have indicated the dangerous situation presented, and it was the want of this observance, together with heedless proceeding in the face of danger, which in part at least brought to the plaintiff his misfortune.

The judgment of nonsuit will be affirmed.

Mr. Justice Kalisch dissents.