MAXINE NILES, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF REUBEN NILES, DECEASED, PLAINTIFF-RESPONDENT, v. PHILLIPS EXPRESS COMPANY, A BODY CORPORATE, AND STANLEY JAGGERS, DEFENDANTS-APPELLANTS.

Submitted February 12, 1937—Decided July 7, 1937.

For the appellants, *McCarter & English* (*Richard J. Congleton* and *Augustus C. Studer, Jr.,* of counsel).

For the respondent, *Theodore Strong & Son* (*Stephen R. Strong,* of counsel).

The opinion of the court was delivered by

HEHER, J.   There was a verdict for plaintiff in this action to recover damages suffered by the next of kin of her intestate as the result of his death through the negligence of defendants (2 *Comp. Stat.* 1910, *p.* 1907; *Pamph. L.* 1913, *p.* 586; *Pamph. L.* 1917, *p.* 531); and the primary reason assigned for the reversal of the consequent judgment was the ruling of the trial judge, elicited by motions to nonsuit and to direct a verdict in favor of defendants, that the evidence presented an issue of fact on the question of their negligence *vel non.*

There was evidence reasonably tending to establish the following matters of fact:   On September 15th, 1934, plaintiff's decedent was killed in consequence of a collision between a Ford coupe, in which he was riding as a passenger, and a tractor and attached truck and trailer (owned by the corporate defendant and in charge of the individual defendant), on route 26 of the state highway system, known also as the

Brunswick pike, about six hundred feet south of the George's Road intersection, in the township of North Brunswick, in the county of Middlesex, the *locus* being "outside of a business or residence district." The collision occurred between four-thirty and five o'clock in the morning. The coupe was then moving in a northerly direction, at a speed of thirty-five miles per hour. The tractor and truck, ten feet in length, and the trailer, twenty-two feet long, headed in the same direction, were parked along the easterly side of the highway—"on the east edge of the highway mostly on the dirt shoulder but about two to two and a half feet on the concrete; the state highway fence is near the road there, and there is not enough room for the truck to park all the way off." They were not "completely parallel with the paved portion of that road; * * * the front of the trailer—that would be the back of the tractor—was just slightly farther east or off the edge of the road than the front of the truck and the rear of the trailer." There was one light on the rear of the trailer. As the truck was parked, "the light would be just off the concrete; * * * it would be over, possibly, two or three inches from the edge of the concrete; it was over the shoulder of the road, and not over the concrete." The tail-board of the trailer "was down, horizontally, even with the floor of the truck, with part of the load on" it. There were three green "body lights" on the left side of the trailer, and three red lights on its right side, although it is fairly inferable that these lights were in such a position as not to be discernible by the driver of the coupe. The travel surface of the highway consisted of four concrete lanes. The normal width of the easterly shoulder at the *locus* was narrowed to five feet by a guard rail erected by the state highway department. There was evidence that Jaggers, the operator of the tractor, parked the vehicles because he "became sleepy." Jaggers testified that his "eyes began to bother" him; that he "pulled the truck to the extreme right of the road as far as" he "could get it;" and that he and a companion remained in the cab until the crash occurred five minutes thereafter. If he gave any thought at all to the subject, he apparently did not deem

it necessary to take any measures for the protection of other vehicular users of the highway while the truck was at a standstill. It was then "pretty dark." The "weather was very bad; it was misty, rainy." The driver of the coupe thus related the attendant circumstances: "Every now and then we would run into patches of fog, and so when I got along where the accident occurred, I don't know—it just seemed as though a patch of fog came. When I saw the patch of fog I didn't know whether it was fog or truck, and I turned to the right—to my left, rather, and that is all I remember." Although "looking ahead," and "watching the road," he did not observe a light on the parked vehicles. The coupe proceeded to the point of collision on the most easterly concrete lane; and there were indisputable physical evidences of contact between the right front and side of the coupe and the left rear of the parked trailer. Just prior to the collision trucks were moving along the highway in a southerly direction. This is the state's principal artery of traffic. It is classified as a "superhighway"—a descriptive term denoting the character and *quantum* of the traffic flowing over it and the hazards attending the operation of vehicles thereon.

The deceased passenger was asleep when the accident occurred; and, concededly, he is not chargeable with negligence, either primary or derivative.

It remains to consider whether the operator of the truck observed the standard of care by which actionable negligence is measured. There was laid upon him the common law obligation to conform to the standard of conduct of a reasonable man so circumstanced. It is of the very nature of the term "reasonable care" that it has a relative significance. It does not lend itself to a practical definition that will absolutely label the conduct under scrutiny in the individual case. Considered in the abstract, it is lacking in definitive quality. The common law concept of negligence has relation to the facts and concommitant circumstances. While the criterion of conduct is fixed, what constitutes adherence to it of necessity depends upon the special circumstances, and therefore the question is ordinarily left to the experienced wisdom and

judgment, so controlled, of the triers of the facts. In the last analysis, the inquiry is what in fact a reasonably prudent man would do under like circumstances. And experience is necessarily a factor of importance in the application of this comparative standard. See *Blumenfeld* v. *Hudson, &c., Railroad Co.*, 89 *N. J. L.* 580. The term connotes such degree of care as is commensurate with the risk of harm—such as a reasonable man would under all the circumstances deem prudent to obviate the danger, known or reasonably foreseeable; and, where the evidence, assayed by reasonable minds, may lead to *bona fide* differences of opinion as to whether there has been an observance of that standard of care, the question is one for the fact-finding authority. The nature of the duty resting upon defendants was a question of law; whether, in the circumstances, they rendered performance of that duty was a question of fact for the jury. *Poniatowski* v. *Griffiths and Cinkowski*, 91 *Id.* 663.

The evidence thus adduced plainly brings the instant case within this category. Article VIII, section 5, of the Traffic act of 1928 (*Pamph. L., p.* 721) laid a duty upon the operator of the coupe to drive the vehicle "upon the right half of the highway," unless it was "impracticable to travel on such side of the highway." And, by article VI, section 2 (a), of that act, it is provided that "no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway." The provision does not apply (section 2 (c)) "to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." This legislative requirement was obviously designed to safeguard highway users against the risk of harm incident to the parking of vehicles upon the pavement reserved for vehicular traffic—the very hazard exhibited by the instant case.

There was evidence tending to show a disregard of this mandate by the operator of the truck. Concededly, a substantial portion of the trailer rested upon the "paved or improved main traveled portion" of the highway. Without even the pretense of necessity, he chose for the parking of the vehicles a place where, by reason of the guard rail required by the physical condition of the adjoining land, the shoulder had been so narrowed as not to supply accommodation. It is fairly inferable from the proofs that these vehicles had been parked for a much longer period than five minutes. Yet the latter interval was sufficient to constitute "parking" within the intendment of the statute. *Fontaine* v. *Charas*, 87 *N. H.* 424; 181 *Atl. Rep.* 417. This case construes a like provision similarly phrased. And the evidence affords no basis for the conclusion that it was "impracticable" to "park or leave" the vehicle "standing off" the "main traveled portion" of the highway. In fact, it sustains a contrary inference, *i. e.*, that the vicinity provided parking space ample to permit of compliance with the statutory direction; and thus it excludes defendants from the exception based upon "impracticability." And subdivision 2 (c) of article VI is admittedly not applicable.

It is the settled rule that the jury could infer negligence from this infraction of the statute. *Evers* v. *Davis*, 86 *N. J. L.* 196; *Kolankiewiz* v. *Burke*, 91 *Id.* 567; *Chiapparine* v. *Public Service Railway Co.*, 91 *Id.* 581; *Doyon* v. *Massoline Motor Car Co.*, 98 *Id.* 540. The legislative prescription establishes a standard of conduct in the operation and management of motor vehicles. Whether such a violation is "a contributing cause to the accident" is a question for the jury, unless, perchance, it conclusively appears that such is not the case. *Baker* v. *Fogg & Hires Co.*, 95 *Id.* 230. And the driver of the coupe was justified in assuming, until he discovered that it was contrary to the fact, that other users of the highway would observe such command of the legislature, and otherwise exercise reasonable care in the use of the highway. *Tischler* v. *Steinholtz*, 99 *Id.* 149; *German* v. *Harris*, 106 *Id.* 521; *Matheke* v. *United States Express Co.*, 86 *Id.* 586; *Baker* v. *Fogg & Hires Co., supra*.

Moreover there was other evidence to sustain an inference of negligence. Whether the conduct of the truck operator, taking into consideration the time, the place and all the circumstances, met the standard of care so laid upon him, plainly involved a factual inquiry. The conditions were extraordinary. So far as the proofs disclose, there was no artificial roadside illumination to dispel the darkness of night. And the condition of the weather was indisputably a major factor entering into the resolution of the question. The driver of the coupe, on his journey from Philadelphia (the truck took the same course), encountered "patches of fog" along the highway, which tended materially to increase traffic hazards. It was "misty and rainy." It is reasonably deducible that fog at the *locus* obscured the view of motor vehicle operators; and it was for the jury to determine whether, under all the circumstances, the rear light, situated as it was to the east of the concrete surface, over the dirt shoulder of the road, with the loaded tail-board extended over it in a horizontal position, was, if visible at all to approaching drivers, a frustration (illusive in effect) of the purpose it was designed to serve. The truck driver was familiar with the road. He had been employed by the corporate defendant for a period of a year or more before the accident, and had frequently driven over the highway. He was aware of the danger incident to the great volume of traffic that passes over it. Not sensible of any duty in the premises, he took no steps to warn drivers approaching from the south of the presence of the vehicles on the travel surface of the highway; and whether a reasonably prudent man would have so acted under all the circumstances was manifestly a jury question. *Seibert* v. *A. Goldstein & Co.*, 99 *N. J. L.* 200.

Lastly, it is contended that there was error in this passage of the charge:

"Was the defendant negligent in leaving his automobile truck and trailer on the side of the highway in the manner in which it was left where it had been for a period of not quite five minutes with the lights on as you may find in the testimony there were lights if you so find?"

The criticism is in the main disposed of by what we have said. It suffices to add that, considered in the light of the whole charge, it in nowise injuriously affected defendants' substantial rights; and this is the test of reversible error laid down by section 27 of the supplement to the Practice act, enacted in 1912. *Pamph. L.* 1912, *pp.* 377, 382.

Judgment affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, LLOYD, CASE, HEHER, DEAR, WOLFSKEIL, RAFFERTY, JJ. 8.

*For reversal*—THE CHIEF JUSTICE, BODINE, DONGES, PERSKIE, HETFIELD, WELLS, COLE, JJ. 7.