WILLIAM FITZPATRICK, PLAINTIFF-APPELLANT, v. MER-
CHANTS & MANUFACTURERS FIRE INSURANCE COM-
PANY, DEFENDANT-RESPONDENT.

Submitted February 17, 1939—Decided April 21, 1939.

For the appellant, *C. Raymond Lyons* and *Fleming & Potter* (*Russell Fleming,* of counsel).

For the respondent, *Kristeller & Zucker* (*Lionel P. Kristeller,* of counsel).

The opinion of the court was delivered by

HEHER, J. The judicial action here assigned for error is the propriety of the direction of a verdict in favor of defendant.

On September 27th, 1932, the defendant insurer issued to plaintiff a policy of fire insurance for the term of one year, covering certain real and personal property situate in the city of Rahway. The insured property was destroyed by fire on May 29th, 1933; and this action was brought to recover the loss. The policy was made subject to cancellation "by the company by giving five days' notice of such cancellation;" and one of the defenses interposed was that, "on or about April 4th, 1933, and prior to the alleged fire," defendant "notified the plaintiff" that it "did cancel the said policy."

Defendant elicited evidence designed to show that the asserted notice of cancellation was given by registered mail. Plaintiff denied delivery of such notice. He acknowledged receipt of a registered letter from the "Central Fire Agency," of 92 William street, in the city of New York, but denied that it was a notice of cancellation. This was the letter that, according to the evidence adduced by defendant, advised plaintiff that the insurer had exercised its reserved right to cancel the policy for non-payment of the stipulated premium. The postal "return receipt" card, introduced into evidence by

defendant, reveals that the registered article was received from the "Central Fire Agency," of the address given above, and that the return receipt was directed to be, and was in fact, delivered to it.

As to the contents of this registered letter, plaintiff testified thus on cross-examination: "I think I recall something from Central Fire Agency telling me that a certain person had left the company." When shown what purported to be a copy of the letter claimed to have been thus dispatched, he declared: "I got nothing like this at all. * * * Nothing at all like this, absolutely nothing. Q. You never got a letter saying that the company give [sic] you notice that its policy 33-38212, issued through the Chatham Agency on property and buildings, is hereby canceled in accordance with printed conditions thereof to take effect in five days? A. No, sir; I never got anything like that. Absolutely not."

What purported to be a "carbon copy" of the letter so sent by registered mail was, at the request of defendant, marked D-6 for identification, but the record does not show that it was offered in evidence, and it has not been incorporated in the state of the case. Counsel for the insurer has appended it to his brief with the explanatory statement that, "time not being available to move to amend the record, the balance of *Exhibit D-1* is annexed to this brief as Schedule 'A.' " But this manifestly does not serve as an amendment of the state of the case. Moreover, *Exhibit D-1* was the postal receipt card, while the letter was marked D-6 for identification. Throughout the trial, they were handled as separate exhibits, bearing these numbers; and, by such separate numbers, defendant offered them in evidence. An objection was interposed; and the ruling is disclosed by the following notation in the transcript; "Register receipt card heretofore marked D-1 for identification entered in evidence and marked *Exhibit D-1.*"

The evidence adduced by defendant respecting the letter thus transmitted was not at all conclusive. Slater, defendant's agent in charge of the "suburban agency accounts letter of cancellation to defendant's "mailing department, department," testified that he signed and "forwarded" the

addressed to Mr. William J. Fitzpatrick, to be forwarded by registered mail and signed for." Dunham, in charge of defendant's "mailing division," testified to the practice in dispatching registered letters. He was asked what he "did with the original of this letter dated April 4th, 1933," and he replied thus: "After it was carded and numbered, and the postage put upon it." He admitted on cross-examination that the "book" containing the record of the mailing of this particular registered article was not in his handwriting. To the question as to "whose handwriting it is in," he replied: "It is one of my men." It is to be noted that Dunham also testified that this registered article was forwarded on "a series of numbers" given the Central Fire Agency by the Post Office Department.

Defendant had served upon plaintiff (so the latter's cross-examination discloses) a notice to "produce all" his "papers;" and plaintiff testified that he had fully complied with the notice thus given, and had produced his "whole file from the Merchants and Manufacturers and C. J. Simons." The letter of cancellation claimed by defendant to have been thus forwarded to him was not among the papers produced. He was then asked whether he had "the paper that you did receive from this company (Central Fire Agency) when you signed this return card," and he replied: "I may have it, yes. * * * I may have it in my files and records at home * * * but it doesn't have anything to do with the Merchants and Manufacturers or C. J. Simons."

The learned trial judge concluded that a directed verdict for defendant was required, since there was "nothing except a denial on behalf of the plaintiff, that he received any notice of cancellation such as that contained in a copy" that defendant "offered as *Exhibit D-1*," and, "upon the court's inquiry as to whether or not the plaintiff could produce the letter which he admits having received upon that date," there was "no representation * * * made to the court that such a letter could be produced." This we conceive to have been an erroneous disposition.

As noted, the state of the case reveals no proof of the contents of the alleged letter of cancellation. *Exhibit D-1* was

merely the registry receipt evidencing the delivery of the registered article by the Central Fire Agency, described as the "sender," to the local post office, and the acknowledgment of its receipt by plaintiff, the "addressee." There was no proof of the communication thus forwarded to plaintiff.

But, assuming for present purposes that defendant had thereby undertaken to advise plaintiff of the cancellation of the policy, the evidence nevertheless presented a factual issue for the determination of the jury.

There was an unqualified denial by plaintiff of the receipt of such notice. And, as pointed out, the evidence introduced by defendant, in its most favorable view, left much to be desired in the way of proof that the registered letter was in fact a notice of cancellation. Dunham testified merely to the practice governing defendant in the mailing of registered letters; and it is to be observed that, while the postal receipt shows the letter was transmitted by the Central Fire Agency, he testified that the letter in question was in fact dispatched by defendant.

In ruling that the denial by plaintiff of the receipt of the notice of cancellation did not suffice to create a jury question, since there was no "representation to the court" that the letter or communication contained in the registered article referred to in *Exhibit D-1* "could be produced," the learned trial judge did not take into account the line of demarcation between the functions of the court and the jury.

Where the matter in issue has been the subject of conflicting evidence, the resolution of the conflict is within the exclusive province of the jury. Unless the case presents admitted or uncontroverted facts, the issue must be submitted to the jury. *Dickinson* v. *Erie Railroad Co.*, 85 *N. J. L.* 586; *Schmidt* v. *Marconi Wireless Tel. Co.*, 86 *Id.* 183; *Koehl* v. *Bollinger*, 112 *Id.* 70. The credibility of the witnesses and the probative value and weight of the conflicting evidence are for the determination of the triers of the facts, unless the particular witness' testimony is inherently improbable or "is inconsistent with the common principles by which the conduct of mankind is naturally governed." *Clark* v. *Public Service Electric Co.*, 86 *Id.* 144; *Second National Bank of*

*Hoboken* v. *Smith,* 91 *Id.* 531; *Sivak* v. *New Brunswick,* 122 *Id.* 197.

The test is not, as suggested by defendant, whether a contrary verdict by the jury would be set aside as against the weight of the evidence. The weight of the evidence is not the determinative. The criterion thus tendered necessarily constitutes a negation of the well established rule that the second of two concurring verdicts upon the same or similar evidence is not ordinarily disturbed on rule to show cause as against the weight of the evidence, where a substantial conflict is presented. *Brown* v. *Paterson Parchment Paper Co.,* 69 *N. J. L.* 474; *Horandt* v. *Central Railroad Co.,* 81 *Id.* 488; *Spargo* v. *Central Railroad Co.,* 84 *Id.* 251; *Uvalde Asphalt Paving Co.* v. *Central Stock Yards Co.,* 84 *Id.* 297; *Dickinson* v. *Erie Railroad Co., supra.*

The rule—invoked by respondent—that a mere scintilla of evidence is not sufficient to create a jury question is not applicable. There may be more than a "mere scintilla" of evidence, and yet not sufficient to save a verdict based thereon as against the contention that it was contrary to the weight of the evidence. A "mere scintilla" of evidence, in the view of the law, has been defined as "the least particle of evidence—evidence which, without further evidence, is a mere trifle." *Offutt* v. *World's Columbian Exposition Co.,* 175 *Ill.* 472; 51 *N. E. Rep.* 651. See, also, 23 *C. J.* 9. This is the ordinary signification of the term. The inquiry is whether the evidence, if credited, would justify the affirmation, by "men of ordinary reason and fairness," of the proposition sought to be maintained. *Sivak* v. *New Brunswick, supra.* Here, respondent had the affirmative of the issue of cancellation.

The judgment is accordingly reversed, and a *venire de novo* awarded; costs to abide the event.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Hetfield, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ. 15.