PAUL CERMAK, PLAINTIFF-RESPONDENT, v. THE HERTZ CORPORATION, ETC., DEFENDANT, AND AETNA METALCRAFT, INC., ETC., AND OLINTO J. DIGEORGE, JOINTLY, ETC., DEFENDANTS-APPELLANTS.

Argued December 16, 1958—Decided January 19, 1959.

*Mr. John E. Hughes* argued the cause for the appellants (*Messrs. Schreiber, Lancaster & Demos,* attorneys).

*Mr. Philip L. Nadler* argued the cause for the respondent (*Mr. Pasquale Pipi* and *Messrs. Gross & Garfield,* attorneys; *Mr. Isaac Gross* and *Mr. Victor P. Mullica,* on the brief).

PER CURIAM. The judgment is affirmed for the reasons expressed in the majority opinion of the court below.

HEHER, J. (dissenting). Negligence in a given case is measured by the supposed conduct of a reasonable man of ordinary prudence under the same or similar circumstances; and so it is a mixed question of law and fact. The court's function is to determine the existence of a duty under the law and to declare the general standard of conduct and whether there has been individual conformance to the required standard where the judgment of reasonable men clearly and indubitably could not differ as to the conclusion; and the jury's province is to determine the facts and the standard of conduct required where the judgment of reasonable men might differ. The distinction is fundamental in our jurisprudence, involving as it does an inquiry ruled by the more or less subjective standard embodied in the ideal, conceptual person of practical experience and judg-

ment, the ordinarily prudent and careful person, in which there is a separation of the functions of court and jury according to the constitutional right of trial by jury. *Hughes v. Atlantic City & Shore R. R. Co.,* 85 *N. J. L.* 212 (*E. & A.* 1914); *Schmidt v. Marconi Wireless Tel. Co.,* 86 *N. J. L.* 183 (*E. & A.* 1914); *Erwin v. Traud,* 90 *N. J. L.* 289 (*E. & A.* 1917); *Sharpe v. Public Service Ry. Co.,* 103 *N. J. L.* 583 (*Sup. Ct.* 1927), affirmed 109 *N. J. L.* 272 (*E. & A.* 1932); *Hager v. Weber,* 7 *N. J.* 201 (1951); *Prosser on Torts* (*2d ed.*), 124 *et seq.,* 191 *et seq.* And see *Bohlen, "Mixed Questions of Law and Fact,"* 72 *U. Pa. L. Rev.* 111, 112 (1924).

"Reasonable care" has a relative significance; the term is lacking in the definitive quality that will automatically resolve the individual case. The common law concept of negligence is at base one of duty arising out of the particular facts and circumstances to protect another against unreasonable risk of harm as an invasion of the essential interest of the other. "Reasonable conduct" does not admit of a purely objective test. While the criterion of conduct is fixed, what constitutes adherence to the rule of necessity depends upon the special circumstances, and so the issue is almost always left to the experienced wisdom and judgment, so controlled, of the triers of the facts. The ultimate question is what in fact a reasonably prudent man would do under like circumstances to obviate the danger to another, known or reasonably foreseeable; and experience is necessarily a major factor in the application of this comparative standard. *Niles v. Phillips Express Co.,* 118 *N. J. L.* 455 (*E. & A.* 1937). The "reasonable man of ordinary prudence" is described by Dean Prosser, *Ibid.,* 125, as "a personification of a community ideal of reasonable behavior, determined by the jury's social judgment."

It was the peculiar province of the jury to determine what a reasonable man of ordinary prudence would have done in the circumstances here.

The plaintiff testified that, proceeding in a westerly direction on Mercer Street while "it was raining very hard," he

"gradually stopped at the intersection of Mercer and Fremont Streets," intending to turn north into Fremont Street and "park his car" nearby; his car, he continued, "stood there at the intersection for two minutes because of the very heavy traffic" on Fremont Street; through the mirror he observed defendant's truck "some distance" to the rear "and when he looked again this truck loomed up" and the collision occurred; he described it as "a pretty good smash," but there was evidence of a "slight impact" and "light damage" to his car; traffic at the intersection there was not controlled by "signs or lights" or otherwise.

The operator of the truck, on the other hand, said that he "was driving west on Mercer Street and saw plaintiff's car standing stopped, 40 or 50 feet in front, and it appeared to [him] as if the plaintiff would take off again because his rear stop light went off, whereupon [he] started up again and when plaintiff failed to move, * * * [he] skidded into the rear of the plaintiff's car"; he "applied his brakes when the plaintiff did not proceed from his standing position after his stop lights went off and indicated to him that the plaintiff was going to go forward again and because the plaintiff's automobile did not go ahead he hit his brakes and was unable to stop in time"; "it was raining very hard and * * * he had to fight his wheel to keep it straight"; after the collision "he saw 'oil slickers' on the wet pavement."

Plaintiff had the right of way over northbound vehicles approaching the intersection on Fremont Street, *R. S.* 39:4–90; and there is no suggestion of a northbound vehicle at or near the intersection at the time; plaintiff's car was forced into the intersection by the impact but there was no car in the way.

It is said in argument that the "quick extinguishment of the stop light reasonably led [the truck operator] to believe the plaintiff was going to move ahead," and "because of the rain and lack of any other signal, [he] could not reasonably ascertain that the plaintiff was still stopped until he got closer to him, whereupon it was too late to stop his truck without contact with the car ahead"; and thus the "mis-

judging of the plaintiff's movement was the result of plaintiff's on and off operation of his stop light," and "all of this, from the time the plaintiff began to stop to the moment of impact, took less than two seconds," a calculation based on the movement of the truck an estimated distance of 40 feet at a speed of 20 miles per hour. It is said that the trial judge actually weighed the evidence and proceeded on the erroneous assumption that the collision occurred an "appreciable length of time after the plaintiff brought his car to a stop" at the intersection, "while waiting there for an opportunity to turn," made necessary by "heavy traffic in both directions on Fremont Street"; and that it was for the jury to say whether, under all the circumstances, the truck operator was in fault, measured by the given standard of duty, particularly in relation to traffic conditions, the plaintiff's "removing the only warning of his stop," the truck driver's reliance on "plaintiff's stop light" in view of the "limited visibility," the skidding of the truck, the distance between the vehicles, and the combination of "oil slick" and a wet pavement.

Plaintiff counters that the purpose of stop lights is "not to indicate that a car is actually stopped," but "to warn following vehicles of an intention to slow down or stop and after it is stopped, its function is accomplished and no further purpose is served by it," and "its then extinguishment is therefore proper"; the "mechanical stop lights are substitutes for the hand signals provided by" *R. S.* 39:4–126, as amended. But, even so, this is not in itself conclusive of the issue of negligence; defendant's conduct is not for that reason alone negligence *per se*. The evidence put in sharp controversy the time element and traffic conditions at the intersection, basic inquiries on the issue of due care by the actors. And is it not common experience that weather conditions and reduced visibility play a role in the use of car lights?

The circumstances attending highway collisions are "within the range of everyday observation and experience"; and primary and contributory negligence almost invariably raise

questions that are preeminently for the jury. *Fox v. Great Atlantic and Pacific Tea Co.,* 84 *N. J. L.* 726 (*E. & A.* 1913), Kalisch, J.; *Dickerson v. Mutual Grocery Co.,* 100 *N. J. L.* 118 (*E. & A.* 1924), Parker, J.; *Branigan v. Demarest,* 109 *N. J. L.* 123 (*E. & A.* 1932). The mere fact that "a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligent conduct *per se*"; the inquiry as to negligence depends upon "all the circumstances," an assessment of conduct that in its very nature is ordinarily for the jury. *Simpson v. Snellenburg,* 96 *N. J. L.* 518 (*E. & A.* 1921). See also *Fine & Jackson Trucking Corporation v. Lehigh Valley R. Co.,* 110 *N. J. L.* 385 (*E. & A.* 1933); *Cristofaro v. Brenfleck,* 116 *N. J. L.* 357 (*E. & A.* 1936); *Maloney v. Carey,* 123 *N. J. L.* 501 (*Sup. Ct.* 1939); *Wallach v. Lightening Electric Co.,* 10 *N. J. Misc.* 954 (*Sup. Ct.* 1932); *Wagner v. Sossner,* 6 *N. J. Misc.* 1013 (*Sup. Ct.* 1928). And it goes without saying that the submission of the issue to the jury does not turn on whether a verdict for the defendant would be set aside as against the weight of the evidence. *Fitzpatrick v. Merchants & Manufacturers Fire Ins. Co.,* 122 *N. J. L.* 468 (*E. & A.* 1939).

A highway mishap may occur through the fault of one or both the actors or without the fault of either; and it is for the jury to resolve the probative value of the evidence and the consequent inferences and conclusions related to the standard of reasonable conduct, save where the proof of the fact is absolute and incontrovertible—*e. g.,* as found in *Burr v. Metropolitan Distributors, Inc.,* 136 *N. J. L.* 583 (*E. & A.* 1948), where a truck " 'at a pretty good speed, maybe 30 miles an hour,' moved out of the street and up on the sidewalk before striking the plaintiff," and there was no "explanation or proof of extenuating circumstances"; or where the "incontrovertible physical facts" contradict the actor's testimony as to his use of care, for instance, when he finds himself in the familiar dilemma that he either must not have looked, must have failed to observe what was

plainly visible, or must have disregarded what he saw, *Prosser, Ibid.,* 192, *n.* 5; or where the testimony is in conflict with unquestionable laws of nature or the law of physics or established scientific principles, 38 *Am. Jur.* 1048, or is otherwise conclusively established as a fact, so much so as to foreclose all inquiry by the jury in the performance of its time-honored function in accordance with the foregoing principles. And the credibility of the witnesses is not an issue for the court. Even where the "facts" are undisputed, the propriety of an inference of failure of duty is still for the jury alone unless it is indisputable. Such is the jury's peculiar province. It has been the rule in New Jersey from early times; indeed, it is embedded in the constitutional right of trial by jury. *Consolidated Traction Co. v. Scott,* 58 *N. J. L.* 682 (*E. & A.* 1896); *Najarian v. Jersey City, Hoboken & Paterson St. Ry. Co.,* 77 *N. J. L.* 704 (*E. & A.* 1909); *Newark Passenger Ry. Co. v. Block,* 55 *N. J. L.* 605 (*E. & A.* 1893).

However *Burr, supra,* may be read, the presumption of negligence embodied in the maxim *res ipsa loquitur,* as a process of probable reasoning, is purely permissive, that is to say, it is an allowable inference that is still one for the jury and not for the court, and the jury may reject it as not of such quality as would move reasonable men to judgment in favor of the tendered hypothesis, even where there is no explanation by the defendant. *Kahalili v. Rosecliff Realty, Inc.,* 26 *N. J.* 595 (1958). Certainly, what happened here cannot, in this context, be equated with the unexplained movement of a truck onto the sidewalk.

And I hold the view that it was error to deny the defendants' motion for a new trial on the grounds (a) of newly discovered evidence that would "materially and substantially affect" the *quantum* of damages allowed by the jury; (b) fraudulent misrepresentation of plaintiff's injuries; and (c) the verdict, even as reduced, "is still excessive and not * * * free from mistake, passion, prejudice or partiality."

The award was grossly excessive, as proved by its reduction by the trial judge from $15,000 to $8,500, and by the

Appellate Division to $6,000, a total of 60 percent. The trial judge found that the verdict was "excessive" and the "result of mistake, partiality, prejudice or passion as to damages only," and a new trial was awarded as to damages unless the plaintiff would consent to a reduction of the verdict in the given amount. The Appellate Division's reduction was based on the "compelling proof in the record upon the motion for a new trial that plaintiff had greatly exaggerated the extent of his injuries," although not in "bad faith," and the "judgment, even as reduced by the court, is clearly excessive." Plaintiff consented to both reductions.

The plaintiff had suffered a work-connected accident on September 8, 1954; and there also a third party, American Book-Stratford Press, Inc., was charged with negligence. A third-party action based on this, the first accident, was begun in the Hudson County Court by summons issued August 7, 1956, about five months after the occurrence of the second accident, March 6, 1956, and two months before the filing of the complaint in the instant action based on the second accident. The newly discovered evidence tends to show that the same injuries and disabilities were in the main severally attributed to the two separate and distinct negligent acts laid to the respective defendants in the third-party actions and that it was done in such a way, in the words of counsel, as to have "each accident separately bear the full responsibility for the alleged disabilities."

There is no occasion to set forth the proofs at length. It suffices to say that there is sufficient in the nature of newly discovered evidence to demonstrate that the charge is made in the utmost good faith, and the proofs have sufficient substance and quality, considered in the context of all the circumstances, to call for the resubmission of the issue to a jury. The defendant was informed of the first accident and the allowance of workmen's compensation. But there was no disclosure of the third-party action until after the jury verdict in the case at hand; and there is the not unreasonable suggestion of a purposeful withholding of knowledge of the pendency of that proceeding and the injuries there attributed

to that defendant's negligence. The newly discovered evidence comes from a comparison of the allegations of the two complaints, answers to interrogatories, depositions, representations made by plaintiff to Dr. Klaus, a medical examiner acting for the defendant in the action based on the first accident, and divergencies in other relevant matters, all of prime import in the·resolution of the factual issues raised in the instant action. The new evidence is material and not merely cumulative; and in the circumstances it can hardly be said that there was an inexcusable want of diligence. The parties are entitled, if there be liability, to an assessment of the damages by a jury, not by the court. *Hager v. Weber, supra.* And there is, moreover, the exorbitant award on the basis of the evidence adduced here, found by the trial judge to have been the product of "mistake, partiality, prejudice or passion," an extravagant allowance indicative of an ill-advised and uninformed judgment of the pecuniary value of the injuries laid to defendant's act which, on the whole, had no objective manifestation—a ground for a new trial conclusive in itself. And, as just said, the Appellate Division's reduction was induced by evidence introduced on the motion for a new trial.

I would reverse the judgment and award a new trial.

BURLING, J. (dissenting). I vote to reverse the judgment from which appeal is taken and would order a trial *de novo.* The trial judge should have submitted the primary question of defendants' alleged negligence to the jury for determination.

PROCTOR, J. (dissenting). I agree with the views of Justice HEHER that the trial judge erred in withdrawing the issue of the defendants' *liability* from the jury's consideration. Under the facts as outlined by Justice HEHER, the issues of negligence and proximate cause as to the collision were for the jury. My conclusion is somewhat buttressed by the fact that plaintiff's counsel, who cannot be said to be neutral, made no motion for a direction of verdict on

the issue of liability at the completion of the evidence. It was *after* the summations of counsel for the parties that the trial judge of his own volition instructed the jury that they were bound to find for the plaintiff on the question of defendants' liability. This action was most unusual, indeed it is unique in my experience. The trial judge was probably prompted in his action by the statement of defendants' counsel in his summation that "he could not find fault with the jury if it found a verdict for plaintiff on the question of negligence." But it is obvious that this was not a concession of liability as a matter of law.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, JACOBS and FRANCIS—4.

*For reversal*—Justices HEHER, BURLING and PROCTOR—3.